[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT. 25, 2011
JOHN LEY
CLERK

_____

No. 08-16161

_____

D. C. Docket No. 04-00211-CV-RDP-RRA

DEMETRIUS T. FRAZIER,

Petitioner-Appellant,

versus

BARBARA BOUCHARD,
Warden, Alger Maximum Correctional
Facility,
TROY KING,
Attorney General of Alabama,
RICHARD ALLEN,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 25, 2011)

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

TJOFLAT, Circuit Judge:

This is an appeal from the district court's denial of habeas relief in a capital

case. The district court denied relief on two alternative grounds. We agree with

the district court on one of the alternative grounds and affirm.

I.

The petitioner, Demetrius T. Frazier, was convicted of capital murder in the

Circuit Court of Jefferson County, Alabama, for the murder of Pauline Brown.[1]

The jury recommended the death penalty by a vote of 10-2 at the conclusion of the

_____

[1] In affirming Frazier's conviction and death sentence on direct review, the Supreme
Court of Alabama recounted the facts of the crime:

> Early on the morning of November 26, 1991, Frazier saw a light on in Pauline
> Brown's ground-floor apartment at the Fountain Heights Apartment complex in
> Birmingham. He removed a screen and entered the apartment through a window.
> Frazier searched the apartment and found $5 or $10 in one of the bedrooms.
> Frazier then heard a television set on in one of the other bedrooms and went to
> that bedroom to see if anyone was there. He found Ms. Brown asleep in the
> bedroom. He awakened her. Armed with a .22 caliber pistol, he demanded more
> money. Ms. Brown gave him $80 from her purse. Frazier then forced her at
> gunpoint to have sexual intercourse with him. While he was raping her, Ms.
> Brown begged Frazier not to kill her. When Ms. Brown refused to stop begging
> for her life, Frazier put the pistol to the back of her head and fired the gun.
> Fearing that someone had heard the gunshot, Frazier left the apartment. He went
> across the street to see if anyone had heard the shot. Satisfied that no one had
> heard the shot, he returned to the apartment. He searched the apartment for more
> money and confirmed that Ms. Brown was dead. He then went to the kitchen, ate
> two bananas, and left the apartment. He threw the pistol in a ditch.

Ex Parte Frazier, 758 So. 2d 611, 613 (Ala. 1999).

penalty phase of the Frazier's trial, and the trial judge followed the jury's recommendation and sentenced him to death.

Unable to obtain relief from his murder conviction and death sentence on direct review,[2] Frazier returned to the circuit court for collateral relief. Invoking Rule 32 of the Alabama Rules of Criminal Procedure, he petitioned the circuit court to vacate his conviction and sentence, claiming that the court had committed multiple reversible errors during the guilt and penalty phases of his trial. The only claim of error relevant to the present appeal (the "relevant claim") is Frazier's contention that his two court-appointed attorneys rendered ineffective assistance of counsel in violation of the Sixth Amendment[3] by failing to investigate and present additional mitigating evidence during the penalty phase of his trial. The circuit court ultimately denied his petition in its entirety on May 7, 2003. The court found that Frazier had not pled the relevant claim with the specificity required by the pleading requirements set forth in Rule 32.6(b) of the Alabama

---

[2] See Frazier v. State, 758 So. 2d 577 (Ala. Crim. App. 1999) (affirming conviction and sentence on direct review); Ex Parte Frazier, 758 So. 2d 611 (Ala. 1999) (same); Frazier v. Alabama, 531 U.S. 843, 121 S. Ct. 109, 148 L. Ed. 2d 66 (2000) (denying certiorari review).

[3] The Sixth Amendment, which has been made applicable to the States, see Gideon v. Wainwright, 372 U.S. 335, 345, 83 S. Ct. 792, 797, 9 L. Ed. 2d 799 (1963), states, in pertinent part, "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence," U.S. Const. amend. VI. The "Assistance of Counsel" means the "effective" assistance of counsel. See, e.g., Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).

Rules of Criminal Procedure. Accordingly, the court summarily dismissed the claim pursuant to Rule 32.7(d), which authorizes the dismissal of a petition that fails to satisfy the Rule 32.6(b) specificity requirement. On August 15, 2003, the Alabama Court of Criminal Appeals, in an unpublished memorandum, adopted the circuit court's order as its own and affirmed. The Supreme Court of Alabama thereafter denied certiorari review.[4]

On February 3, 2004, Frazier petitioned the United States District Court for the Northern District of Alabama for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He raised substantially the same claims as in his Rule 32 petition in state court, including the relevant claim. Frazier also sought an evidentiary hearing. The district court declined his request for an evidentiary hearing, but, with respect to the relevant claim, permitted Frazier to expand the record with affidavits,

---

[4] The Rule 32 proceeding had a convoluted history. The proceeding began on September 26, 2001, the day Frazier filed his Rule 32 petition. After the State answered the petition, the circuit court summarily denied the petition in a one-page docket entry order on February 8, 2002. Frazier moved the court for reconsideration and presented the court with an amended Rule 32 petition. The circuit court denied the motion to reconsider on April 3, 2002, without considering the amended petition. On February 28, 2003, the Alabama Court of Criminal Appeals vacated the dismissal and remanded the case to the circuit court with instructions to conduct an evidentiary hearing if necessary. In addition, the court instructed the circuit court to "make written specific findings of fact as to any ineffective-assistance-of-counsel claims that were denied on the merits, and clarify for the record, in a written order, any procedural bars applicable to the remaining arguments contained in the petition for postconviction relief." Frazier v. State, 884 So. 2d 908, 911 (Ala. Crim. App. 2003).

On remand, the circuit court, on May 7, 2003, denied Frazier's petition without an evidentiary hearing. Frazier appealed, and the Court of Criminal Appeals affirmed, as indicated in the text.

childhood records, and other evidence.[5]

On September 28, 2007, after reviewing the expanded record, the district court entered a final judgment denying Frazier's habeas petition in its entirety. The court contemporaneously issued a memorandum opinion stating the grounds upon which it denied each of Frazier's claims. With respect to the relevant claim, the court provided two alternative holdings in support of its denial of relief. The first was that the Alabama Court of Criminal Appeals rested its decision on independent and adequate state procedural grounds when it relied on Rules 32.6(b) and 32.7(d) of the Alabama Rule of Criminal Procedure to dispose of the relevant claim, thereby precluding federal review. The second was that, even if these procedural grounds did not preclude the district court from considering the relevant claim on the merits, 28 U.S.C. § 2254(d)(1) barred habeas relief because the Court of Criminal Appeals's decision was neither contrary to, nor involved an

---

[5] The court did this pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, which provides that

> [i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. . . . The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

28 U.S.C. § 2254 Rule 7(a)–(b).

unreasonable application of, the controlling Supreme Court precedent, Strickland

v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Frazier

immediately moved the court to alter or amend its judgment pursuant to Rule 59(e)

of the Federal Rules of Civil Procedure and, on September 22, 2008, the court

denied his motion. Frazier then sought a certificate of appealability ("COA") from

the district court pursuant to 28 U.S.C. § 2253(c). The district court denied

Frazier's application on October 27, 2008.

On June 10, 2009, on Frazier's application, we granted a COA to review the

district court's alternative holdings. We review those holdings de novo. See, e.g.,

Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000). We address them in turn.

II.

The district court erred in its determination that Frazier procedurally

defaulted the relevant claim by failing to comply with Rule 32.6(b)'s pleading

requirements. A dismissal pursuant to Rule 32.7(d) of the Alabama Rules of

Criminal Procedure is not, at least in this instance, an independent and adequate

state ground sufficient to insulate the relevant claim from federal review.[6]

---

[6] A petitioner seeking post-conviction relief in a Rule 32 proceeding has the "burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Ala. R. Crim. P. 32.3. Animating this requirement is Rule 32.6(b), which requires a petitioner to include in his petition "a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds." Ala. R. Crim. P. 32.6(b). Rule 32.7(d) provides that "the court may either dismiss the petition or grant

The procedural-default doctrine "dictates that a state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim. Ward v. Hall, 592 F.3d 1144, 1156 (11th Cir.) (alteration omitted) (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)) (internal quotation marks omitted), cert. denied, 131 S. Ct. 647 (2010). The doctrine is "grounded in concerns of comity and federalism," Coleman v. Thompson, 501 U.S. 722, 730, 111 S. Ct. 2546, 2554, 115 L. Ed. 2d 640 (1991), and "was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures," Judd, 250 F.3d at 1313.[7]

_____

leave to file an amended petition" if, among other reasons, "the court determines that the petition is not sufficiently specific"—in other words, if the petition fails to comply with Rule 32.6(b)'s pleading requirements. Ala. R. Crim. P. 32.7(d).

While the Court of Criminal Appeals refers to all three of these rules in its pertinent order, we focus our analysis on Rule 32.6(b), as Frazier's failure to provide "full disclosure of the factual basis" of the relevant claim was the sine qua non of the Court of Criminal Appeals's dismissal.

[7] It is uncontroversial that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001); see also Owen v. Sec'y for Dep't of Corr., 568 F.3d 894, 908 (11th Cir. 2006) (holding that a petitioner may overcome a procedural default by demonstrating "either (1) an adequate cause for and actual prejudice arising from the default, or (2) 'that a miscarriage of justice, caused by a substantial denial of constitutional rights, will occur' if the petitioner's federal claims are not considered." (quoting Lynd v. Terry, 470 F.3d 1308, 1313–14 (11th Cir. 2006))).

Because we find no procedural default, we need not undertake an analysis of whether Frazier has shown adequate cause for failing to comply with Rule 32.6(b) and actual prejudice, or, alternatively, if our failure to consider the merits of his claim would result in a fundamental

7

Nonetheless, comity does not demand that we give preclusive effect to a state court decision disposing of a claim on state grounds unless: (1) the state court has plainly stated that it is basing its decision on the state rule; (2) the state rule is "adequate," i.e., not applied in an arbitrary manner; and (3) the state rule is "independent," i.e., the federal constitutional question is not intertwined with the state law ruling. Card v. Dugger, 911 F.2d 1494, 1516 (11th Cir. 1990). We

> presume that there is no independent and adequate state ground for a state court decision when the decision fairly appears to rest primarily on federal law, or to be interwoven with federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.

Coleman, 501 U.S. at 735, 111 S. Ct. at 2557 (quoting Michigan v. Long, 463 U.S. 1032, 1040–41, 103 S. Ct. 3469, 3476–77, 77 L. Ed. 2d 1201 (1983)) (internal quotation marks omitted). As discussed below, because a dismissal under Rule 32.7(d) for failure to sufficiently plead a claim under Rule 32.6(b) requires an evaluation of the merits of the underlying federal claim, the Court of Criminal Appeals's determination was insufficiently "independent" to foreclose federal habeas review.[8] Accordingly, the district court was not barred from considering

miscarriage of justice.

[8] In its August 15, 2003 affirmance of the circuit court's May 7, 2003 order denying Frazier's Rule 32 petition, the Alabama Court of Criminal Appeals adopted "as its own" the circuit court order. Thus, while we evaluate the Court of Criminal Appeals's determination, we do so by looking at the circuit court's reasoning.

the merits of the relevant claim.[9] Further, although the district court found that Frazier failed to comply with Rule 32.6(b), it passed on the merits of the relevant claim. In finding noncompliance, the district court found Frazier's allegations insufficient to make out a claim of ineffective assistance of counsel under Strickland. An examination of circuit precedent and the Court of Criminal Appeals's decision affirming the circuit court's denial of the relevant claim confirms this holding, i.e., that the Court of Criminal Appeals's dismissal was a reviewable merits determination.

A.

First, the determination that adjudications under Rules 32.6(b) and 32.7(d) of the Alabama Rules of Criminal Procedure are on the merits comports with this court's precedent. In Powell v. Allen, 602 F.3d 1263 (11th Cir. 2010), we concluded that an Alabama court's summary dismissal of federal constitutional claims under Rule 32.6(b) should be reviewed as a holding on the merits:

> The Rule 32 court, affirmed by the state appellate court, found that [petitioner] failed to plead facts on which an ineffective assistance claim could be based and, for that reason, denied [petitioner's] claim and request for an evidentiary hearing. We thus review the Rule 32

---

[9] We also note that, because a summary dismissal under Rule 32.7(d) for failure to sufficiently plead a claim under Rule 32.6(b) requires at least a cursory evaluation of the underlying federal claim, the Court of Criminal Appeals's determination was also insufficiently "independent" to foreclose federal habeas review. See generally Borden v. Allen, No. 09-14322, slip op. at 57 (11th Cir. July 12, 2011); Powell v. Allen, 602 F.3d 1263 (11th Cir. 2010).

9

court's rejection of [petitioner's] claim as a holding on the merits.

Id. at 1272–73 (emphasis added) (footnote omitted) (citations omitted). Moreover, in Borden v. Allen, No. 09-14322, slip op. at 58 (11th Cir. July 12, 2011), we addressed the operation of Rule 32.6(b) in similar circumstances, concluding that "an Alabama court's consideration of the sufficiency of the pleadings concerning a federal constitutional claim contained in a Rule 32 petition necessarily entails a determination on the merits of the underlying claim; we cannot construe such a rule to be a state procedural bar that would preclude our review." We thus reviewed the "merits determination of the Court of Criminal Appeals under the deferential standards set forth in AEDPA." Id.

### B.

We also explained in Borden that "[e]ven if adjudications under Rule 32.6(b) were not categorically 'on the merits,' the Alabama Court of Criminal Appeals's ruling plainly shows that it did not rely on a procedural bar in dismissing Borden's relevant claims." Id., slip op. at 52. A similar analysis in the present case, as conducted below, provides the same confirmation that the Alabama Court of Criminal Appeals's ruling at issue was a merits determination.

Frazier's 178-page Rule 32 petition contained twenty-six potential grounds for relief. The relevant claim was contained within one ground for relief. It

10

stated, "**MR. FRAZIER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DURING BOTH THE GUILT AND PENALTY PHASES OF HIS TRIAL.**"  In essence, Frazier asserted that his attorneys performed deficiently by failing to investigate his personal, educational, social, and institutional history in preparation for the penalty phase of his trial.  Had they conducted such an investigation, Frazier alleged, they would have uncovered powerful mitigating evidence that they could have presented to the jury.  Frazier claimed that, had the jury heard this evidence, the resulting sentence would have been different.

The Court of Criminal Appeals began its general analysis of Frazier's Sixth Amendment claims with an explication of Strickland.  It next undertook a discussion of the two Alabama Rules of Criminal Procedure—32.6(b) and 32.7(d)—relevant to our review.  The court then reminded the trial court and the parties that "[t]o be entitled to an evidentiary hearing, a petition must be meritorious on its face."

After setting forth the rules and law relevant to Frazier's ineffective assistance of counsel claims, the court expressly disclaimed that it was relying on the state procedural default rules to avoid reviewing them.  In pertinent part, the court stated,

The Court initially notes that Frazier raised on direct appeal several

11

ineffective assistance of counsel claims, which were addressed by the appellate courts. Arguably, because he raised these claims, all additional claims of ineffective assistance of counsel are waived. The Court, will, however, address the claims raised in the petition.

(emphasis added).

Finally, turning to the relevant claim, the Court of Criminal Appeals stated:

Frazier fails to attach to his Rule 32 petition any of the alleged documentation he contends was readily available to establish these claims, nor does he identify the source of this alleged evidence. Frazier also fails to proffer in his Rule 32 petition the names of any witnesses that he contends could have been called to testify or proffer to the Court what their testimony would have been. See Thomas v. State, 766 So. 2d at 893 (holding that "[a] claim of failure to call witnesses is deficient of [sic] it does not show what the witnesses would have testified to and how that testimony might have chanted [sic] the outcome"). These claims are summarily dismissed because they fail to meet the specificity and full factual disclosure and pleading requirements of Rules 32.3 and 32.6(b), ARCrP.

(emphasis added). This discussion, though it invokes state pleading rules, goes directly to the merits of Frazier's claim; more precisely, it plainly states that the claim is nonmeritorious, as Frazier failed to state his claim with the specificity required by Alabama's fact-pleading[10] post-conviction scheme.[11]

---

[10] Federal habeas petitioners are also required to fact plead their claims. See McFarland v. Scott, 512 U.S. 849, 856, 114 S. Ct. 2568, 2572, 129 L. Ed. 2d 666 (1994) ("Habeas corpus petitions must meet heightened pleading requirements . . . ." (citing 28 U.S.C. § 2254 Rule 2(c))); see also Borden v. Allen, No. 09-14322, slip op. at 42–51 (11th Cir. July 12, 2011) (comparing Alabama's post-conviction scheme to the federal rules governing habeas proceedings).

[11] We also note the contrast between the Court of Criminal Appeals's treatment of the relevant claim and that of Frazier's other claims. In a section of its order entitled "**CLAIMS**

12

Therefore, based on Eleventh Circuit precedent and on our reading of the operative state-court holding in this case, we hold that the relevant claim—i.e., Frazier's ineffective-assistance claim—was adjudicated "on the merits" and the Court of Criminal Appeals's dismissal of the claim did not rest on an adequate and independent state law ground. Thus, we may address the claim, subject to review under the standards of AEDPA.

## III.

While the district court erred in its finding that Frazier had procedurally defaulted the relevant claim, we agree with the court's alternative holding that, through the lens of AEDPA, Frazier was unable to carry the burden of demonstrating that his attorneys' allegedly ineffective assistance of counsel prejudiced the sentencing phase of his criminal proceedings, as required by Strickland.

### A.

#### 1.

AEDPA limits the scope of federal habeas review of state court judgments in the spirit of furthering "comity, finality, and federalism." Michael Williams v.

**PRECLUDED AS BEING PROCEDURALLY BARRED PURSUANT TO RULE 32.2(a), ARCrP**," the court unambiguously relied on state procedural grounds to dismiss twenty-four of Frazier's other claims. The court's failure to do so with regard to the relevant claim further indicates that the court's ruling was on the merits.

Taylor, 529 U.S. 420, 436, 120 S. Ct. 1479, 1490, 146 L. Ed. 2d 435 (2000). As codified, AEDPA forbids a federal court reviewing a state conviction to grant a writ of habeas corpus unless the state court adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,[12] as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[13]

Before elaborating on the application of § 2254(d)(1) to Frazier's relevant claim, it is essential to establish precisely what allegations our review covers. To determine the contours of the relevant claim, we need to establish which of Frazier's petitions—his Rule 32 petition presented to the Alabama courts or his habeas petition, along with the expanded record, presented to the district court—we must review. In short, we review the former and may not consider the latter. Cullen v. Pinholster, 563 U.S. ----, 131 S. Ct. 1388, 1398, --- L. Ed. 2d ---- (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that

---

[12] It is beyond question that, in addressing the relevant claim, we are dealing with an area of "clearly established Federal law." See, e.g., Terry Williams v. Taylor, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 1511–12, 146 L. Ed. 2d 389 (2000) (finding petitioner's claim that he was prejudiced because his "trial lawyers failed to investigate and to present substantial mitigating evidence to the sentencing jury" fell "squarely" into the clearly established rubric for evaluating Sixth Amendment claims under Strickland).

[13] A federal court may also grant the writ if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). This provision is not at issue in this appeal.

14

was before the state court that adjudicated the claim on the merits."); see also Powell, 602 F.3d at 1273 ("[W]e look only to the allegations in [petitioner's] Rule 32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel.").[14]  Our review is therefore limited to the claims presented to and the record developed by the Alabama courts in Frazier's Rule 32 proceedings.

2.

In his Rule 32 petition, Frazier presented extensive evidence in support of the relevant claim.  Because this petition serves as the operative pleading, the allegations therein warrant further elaboration.

Frazier began broadly with the assertion that "[t]rial counsel rendered ineffective assistance of counsel when they unreasonably failed to investigate the guilt and penalty phases of the trial."  Following a discussion of Strickland and a summary of events at trial, Frazier turned to the specifics of the relevant claim.  He first described his attorneys' purported failure:

_____

[14]  The limitation of the scope of our review to the state record comports with principles of comity and federalism.  See Richter, 131 S. Ct. at 787 (discussing "the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions.").  It also comports with common sense. See Pinholster, 131 S.Ct. at 1399 ("It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

As a result of defense counsel's unreasonable failure competently to investigate, develop and present information about Mr. Frazier's inter-generational family history, upbringing, history of institutionalization, medical and psychological health, education, development, background and character, or to consult with, prepare and present information from competent penalty phase expert witnesses, Mr. Frazier's jury, and the sentencing court, were precluded from hearing substantial mitigating evidence relevant to Alabama Criminal Code §§ 13A-5-51, 13A-5-52, and 13A-5-47 and non-statutory mitigation.[15]

More specifically, Frazier faulted his attorneys for failing to "identify, locate, and interview numerous witnesses, including but not limited to: members of his family, caretakers, health care providers, school personnel, persons related to institutions at which Mr. Frazier was placed; juvenile and adult probation and/or parole officers, prior counsel, and court personnel." He further claimed that his attorneys did not obtain critical records from various educational, medical,

---

[15] Alabama law allows a defendant to introduce both enumerated and unenumerated mitigating circumstances at the penalty phase of a capital trial. See Ala. Code §§ 13A-5-51, 52. Frazier's counsel offered evidence of one enumerated mitigating circumstance: the "age of the defendant at the time of the crime," which was nineteen. Id. § 13A-5-51(7). The presentation of "non-statutory mitigation" referred to in the petition is authorized by § 13A-5-52 of the Alabama Code, which reads:

In addition to the mitigating circumstances specified in Section 13A-5-51, mitigating circumstances shall include any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death, and any other relevant mitigating circumstance which the defendant offers as a basis for a sentence of life imprisonment without parole instead of death.

Id. § 13A-5-52.

16

and correctional institutions.

Frazier asserted in his Rule 32 petition that, had counsel undertaken the proper investigation, the following facts would have been uncovered:

93. Mr. Frazier was raised in the most impoverished and literally toxic areas of Detroit, affected by unceasing violence, drug activity, poverty, unemployment and illiteracy. His upbringing was marked by substance abuse, crime, the violence around him and the deaths of close family and friends. Mr. Frazier endured the loss of close family members and other caretakers during his childhood and adolescence, as well as the violent deaths of young cousins and friends.

94. Mr. Frazier has never known his father; he was raised by his mother and her dysfunctional family. Mr. Frazier and his mother and siblings lived in a series of crowded, unfit residences with multiple generations of maternal relatives and revolving family friends who were alcohol and/or drug addicted, mentally ill, physically and/or sexually abusive towards Mr. Frazier, his siblings and/or his mother, and/or involved in criminal activities. Due to the constant violence, drinking and drug use, and gambling at the family home, throughout their childhood and adolescence Mr. Frazier and his siblings were deprived of parental guidance, security, material and financial resources, and private living quarters. Additionally, the family home was frequently burglarized. Mr. Frazier and his siblings slept wherever they could, and were "watched over" by a television and random neighborhood caretakers while their extended family gambled and drank and used drugs. The elder men in the family encouraged Mr. Frazier and his male cousins to engage in criminal activity rather than providing a positive role model.

95. Mr. Frazier's mother, a teenager when he was born, exposed her children to a series of substance-addicted men, many of whom were involved in criminal activities. These men physically and verbally attacked her in the presence of Mr. Frazier and his siblings, to the point that Mr. Frazier and the other children became involved in physical altercations with the men when trying to protect their mother. As an example, on one occasion Mr. Frazier and his siblings

17

watched as his mother and her boyfriend were repeatedly stabbed by a neighbor; Mr. Frazier helped them get away from the man to prevent him from killing them.

96. Due to their poverty and limited functioning, Mr. Frazier's family had to change residences frequently, moving around the most violent and depressed areas of metropolitan Detroit. This constant relocation caused Mr. Frazier to have to transfer from school to school. Mr. Frazier was also subjected to forced busing, and hostile, pressured school environments, targeted by school and neighborhood bullies who beat him and robbed him of the few precious items he had been able to obtain for himself with pay from a summer job. Eventually, he completely dropped out of school.

97. Mr. Frazier also suffered significant multiple head injuries as an infant, child, adolescent and adult, and has been knocked unconscious on multiple occasions. He has been the victim of stabbings, shootings, beatings as an adolescent and young adult. Mr. Frazier has also been a chronic asthmatic throughout his life.

98. Mr. Frazier has been institutionalized in county and state facilities in Michigan for much of his adolescence and young adulthood, yet he never has had competent experts address his lifelong psychiatric, psychological, neuropsychiatric, emotional, educational and functional skills impairments. Despite this, he evidenced an ability to function in structured educational and work situations while imprisoned.

99. Mr. Frazier has evidenced symptomology of profound mental disorder, including but not limited to his belief that he can read minds, other people can read his mind, and that he can see into the future; hallucinations; ideas of reference, e.g. receiving specific messages from television advertisements he believes were intended for him; concrete thinking processes; character disorder, impaired attention, limited learning capacity; grandiose tendencies; compulsive behavior; mumbling inappropriate responses to questions; and attempted suicide. During his 1992 trial in Michigan, the court ordered that Mr. Frazier receive psychological testing. CR-82.

100. Mr. Frazier was addicted to alcohol and drugs in the period immediately preceding the present offenses, as well as throughout his adolescence. Additionally, during this period Mr. Frazier was shot and hospitalized, and was the victim of a burglary.

18

According to Frazier, the failure of counsel to investigate and uncover this evidence led the penalty phase jury and the sentencing judge to determine a penalty that "was unreliable and based on inadequate, incomplete, false, misleading evidence." Had proper investigation and presentation occurred, Frazier concluded, the result of the penalty phase of his trial and subsequent sentencing hearing would have been a sentence of life without the possibility of parole.

3.

As stated above, 28 U.S.C. § 2254(d)(1) governs our review of the Court of Criminal Appeals's summary dismissal of the relevant claim. The United States Supreme Court has provided significant guidance with regard to habeas review of petitioners' claims generally and ineffective assistance of counsel claims specifically.

We grant habeas relief under § 2254(d)(1) in two situations. First, under § 2254(d)(1)'s "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." Terry Williams v. Taylor, 529 U.S. 362, 412–13, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000).

Next, under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case. Id. at 413, 120 S. Ct. at 1523. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Wiggins v. Smith, 539 U.S. 510, 520, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003) (quoting Lockyer v. Andrade, 538 U.S. 63, 76, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003)). Importantly, for a federal habeas court to find a state court's application of Supreme Court precedent "unreasonable," it is not enough that the state court's adjudication be "incorrect or erroneous"; that application must have been "objectively unreasonable." Id. at 520–21, 123 S. Ct. at 2535 (internal citations omitted).

In Frazier's situation, where the relevant claim implicates Strickland, our review is even more deferential. See Richter, 131 S. Ct. at 788 ("Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."

20

(citations and internal quotation marks omitted)).[16]

We now apply this "doubly" deferential standard to Frazier's case.

B.

Under Strickland,

[a] convicted defendant's claim that counsel's assistance was so
defective as to require reversal of a conviction or death sentence has
two components. First, the defendant must show that counsel's
performance was deficient. This requires showing that counsel made
errors so serious that counsel was not functioning as the "counsel"
guaranteed the defendant by the Sixth Amendment. Second, the
defendant must show that the deficient performance prejudiced the
defense. This requires showing that counsel's errors were so serious
as to deprive the defendant of a fair trial, a trial whose result is
reliable. Unless a defendant makes both showings, it cannot be said
that the conviction or death sentence resulted from a breakdown in
the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S. Ct. at 2064.

1.

To render adequate performance under Strickland's first prong, defense

counsel must conduct a reasonable investigation—one within "the wide range of

professionally competent assistance"—in relation to the representation. Powell,

---

[16] Moreover, it matters not for our analysis whether the Court of Criminal Appeals
resolved the relevant claim under Strickland or under a state rule. See Early v. Packer, 537 U.S.
3, 123 S. Ct. 362, 154 L. Ed.2d 263 (2002). Compliance with the "contrary to" language of
AEDPA "does not require citation of the [Supreme Court's] cases—indeed, it does not even
require awareness of [those] cases, so long as neither the reasoning nor the result of the state-
court decision contradicts them." Id. at 8, 123 S. Ct. at 365.

602 F.3d at 1273 (quoting Strickland, 466 U.S. at 690, 104 S. Ct. at 2066). In assessing the reasonableness of counsel's decision not to investigate, we must assess "all the circumstances" and "consider whether the known evidence would lead a reasonable attorney to investigate further." Id. (citations, internal quotation marks, and ellipses omitted).

We agree that, in order to provide representation to a defendant in a capital trial, counsel must perform a thorough investigation where it appears necessary to do so. If Frazier's allegations concerning counsel's performance are true—an assumption we must indulge because the state trial judge conducted no evidentiary hearing to evaluate the strength of Frazier's claims—there is support for Frazier's argument that his attorneys failed to satisfy Strickland's performance prong.

But we need not reach an ultimate conclusion on the matter, for we "may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied." Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069). Because we conclude that Frazier cannot make the requisite showing of prejudice under Strickland's second prong, we assume without deciding that Frazier's attorneys failed to perform an investigation of his familial, educational, medical, and institutional history as claimed in his Rule 32 petition, and proceed to

22

address Strickland's second prong.

2.

To establish prejudice under Strickland's second prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S. Ct. 2067. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. And "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In Frazier's case, we must determine whether the facts presented in his Rule 32 petition establish that, had his counsel conducted a reasonable investigation and presented additional mitigating evidence, there is a reasonable probability that the jury would have recommended—and the judge would have imposed—a sentence of life without parole. Or, more accurately given the operation of AEDPA, we must determine whether the Alabama Court of Criminal Appeals's determination that his petition failed to sufficiently plead such facts—in light of Alabama's fact pleading post-conviction regime—was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

23

Frazier cannot make this showing. "In deciding whether this ruling by the state court [denying post-conviction relief] ultimately was reasonable, we conduct the prejudice inquiry by evaluat[ing] the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—[and] reweighing it against the evidence in aggravation." Hall v. Head, 310 F.3d 683, 701 (11th Cir. 2002) (citation and internal quotations marks omitted).[17]

A principled re-weighing of aggravating and mitigating circumstances requires us to consider both the additional evidence that defense counsel could have presented on Frazier's behalf in mitigation as well as the additional evidence that the prosecution could have presented to the jury in aggravation. At the penalty phase of Frazier's trial, the prosecution argued and the jury found one aggravating circumstance, that "[t]he capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary, or kidnapping." Ala. Code § 13A-5-49(4). In mitigation, defense

_____

[17] While Hall v. Head, 310 F.3d 683 (11th Cir. 2002), intimates that we may review evidence "adduced in" the federal habeas proceeding, id. at 701, such an approach is foreclosed by Cullen v. Pinholster, 563 U.S. ----, 131 S. Ct. 1388 (2011). We therefore review only that evidence—both in aggravation and mitigation—produced in the state court proceedings, both direct and collateral.

24

counsel presented, and the jury considered, that Frazier was only nineteen years old at the time of the crime. See id. § 13A-5-51(7) ("Mitigating circumstances shall include . . . [t]he age of the defendant at the time of the crime."). Were this court to grant Frazier habeas relief and order a new sentencing hearing, the prosecution would certainly once again pursue the same statutory aggravating circumstance, and defense counsel would surely present Frazier's age—along with the non-statutory mitigating evidence he presented to the state courts in his Rule 32 petition—as mitigating circumstances.

Significantly, though, in this imagined second sentencing hearing we must conduct, the prosecution would not be limited to the sole aggravating circumstance it previously presented. In addition to that circumstance, the prosecution could present—and could have presented at Frazier's original sentencing hearing, but did not do so for reasons unknown to this court—evidence of Frazier's storied violent criminal history. Under Alabama Code § 13A-5-49(2), the State may seek to prove as an aggravating circumstance in a capital sentencing trial evidence that "[t]he defendant was previously convicted of another capital offense or a felony involving the use or threat of violence to the person."[18]

---

[18] Alabama courts have routinely affirmed the use of this statutory aggravating circumstance in capital cases, and have specifically approved of its use to present the jury with evidence of a defendant's previous convictions for robbery, murder, and criminal assault. See Knight v. State, 907 So. 2d 470, 484–85 (Ala. Crim. App. 2004) (collecting cases).

25

As indicated in the pre-sentence report prepared for the circuit court following Frazier's conviction, Frazier had been previously charged with and convicted of several felonies involving the use or threat of violence to the person in his hometown of Detroit, Michigan.[19] Specifically, prior to his conviction in Jefferson County, Frazier had been found guilty of: "Felony – Crim Sexual Conduct I (Multiple Variables)"; "Felony – Armed Robbery"; "Murder"; and "Weapons Felony Firearms." It is beyond question that a prosecutor in a new sentencing hearing would be authorized to introduce evidence of these previous convictions for violent crimes.

Given the availability of an additional, highly prejudicial aggravating circumstance, we simply cannot say that, but for the failure of Frazier's counsel to investigate and present additional mitigating evidence to the sentencing jury, "there is a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. 2068.[20] Certainly, had

---

[19] Frazier's relevant Michigan convictions occurred in March and June of 1992, prior to his trial in Alabama in 1996. Whether the underlying crimes occurred prior or subsequent to the murder of Pauline Brown is immaterial. See, e.g., Ex Parte Coulter, 438 So. 2d 352, 353 (Ala. 1983) ("[T]he words 'previously convicted' . . . refer to a time prior to sentence instead of prior to the date of the commission of the capital offense.").

[20] We have previously explained that

[W]ith crimes like this one, that are "carefully planned, or accompanied by torture, rape or kidnapping," we have often observed "that the aggravating circumstances of the crime outweigh any prejudice caused when a lawyer fails to

26

Frazier's counsel presented evidence of his unstable upbringing and the "toxic" environment in which Frazier was raised, the sentencing jury would have had a more complete picture of him when making its critical recommendation. But the jury was also without evidence of his previous convictions for violent crimes in Michigan. And "[s]ection 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Richter, 131 S. Ct. at 786 (citation and internal quotations marks omitted). Bearing in mind the "doubly" deferential nature of Strickland review under AEDPA, id. at 788, we cannot hold that Frazier has made the requisite showing of prejudice. We must therefore deny the writ.

IV.

---

present mitigating evidence." Dobbs v. Turpin, 142 F.3d 1383, 1390 (11th Cir. 1998) (citations and quotation marks omitted); see also Hall v. Head, 310 F.3d 683, 704–05 (11th Cir. 2002) (finding no prejudice where the psychologists' testimony regarding defendant's behavior was speculative and the evidence in aggravation was strong); Thompson v. Wainwright, 787 F.2d 1447, 1453 (11th Cir. 1986) (finding no prejudice where evidence of defendant's "troubled" childhood and "mild[]" retardation had not been introduced at sentencing, since the sentence "was strongly supported by the aggravating circumstances introduced in the record"); Francis v. Dugger, 908 F.2d 696, 702–04 (11th Cir. 1990) (finding that failure to present additional mitigating evidence of an "impoverished, abused, and socio-economically limited childhood, and . . . of his brain dysfunction, diagnosed by his expert as fetal alcohol syndrome," did not prejudice defendant convicted of torture-murder of government informant).

Kokal v. Sec'y, Dep't of Corr., 623 F.3d 1331, 1347 n.11 (11th Cir. 2010).

27

For the foregoing reasons, the district court's order denying Frazier's petition for a writ of habeas corpus is

AFFIRMED.